THE JOHN W. CANNON.[1]

McCAN and another *v.* THE JOHN W. CANNON, (D. C. McCAN & SON, Intervenors.)[1]

*(Circuit Court, E. D. Louisiana.   June 13, 1885.)*

1. PROMISSORY NOTES—MORTGAGE OF VESSEL.
    Holders of a promissory note taken by them long after maturity, take it subject to all equities existing between the original parties; and, when the note was dishonored long prior to the date of sale of the vessel (upon which it was secured by mortgage) to the claimants, so far as the mortgage right is concerned no agreements or conduct between the original parties, subsequent to the sale, can bind the claimants.

2. PLEDGE—CIVIL CODE LA. ART. 3142.
    By article 3142 of the Civil Code of Louisiana, a debtor may give in pledge whatever belongs to him, but cannot pledge any further right than he has himself; but article 3145 of the same Code permits a person to pledge the property of another with the express or tacit consent of the owner.

Admiralty Appeal.
*John D. Rouse* and *William Grant*, for libelants and intervenors.
*John H. Kennard, W. W. Howe*, and *S. S. Prentiss*, for claimants.
PARDEE, J.   The original libel in this case is for $1,787.93 for repairs and supplies, and is not contested.   The intervening libel is to recover the amount of a certain promissory note made by John W. Cannon on the eighteenth of November, 1879, for the sum of $2,500, payable to the order of said John W. Cannon, six months after the date thereof, with 8 per cent. per annum interest from maturity until paid; the same being indorsed and delivered in blank, and secured by mortgage on the steam-boat John W Cannon.

----

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

Intervenors allege that said note was duly transferred to them for value; that they are subrogated in law to the mortgage security; and that the note remains unpaid in principal and interest.

The answer to the intervention admits the making of the note and mortgage, but denies the consideration, the recording, the transferring for value to intervenor, and the subrogation. The answer avers the purchase by claimant from the late John W. Cannon of said steam-boat John W. Cannon, on the first day of October, 1881, and the due enrollment of the bill of sale at the home port of the vessel; that the note sued on is one of a series of notes secured by mortgage made by the late John W. Cannon in November, 1879, and delivered to George Moorman, an employee, for the sole purpose of raising money for the use of the boats mortgaged, and of securing the obligations of said Cannon in his steam-boat business; that said Moorman had the custody of said notes as such employe for use as aforesaid; that the recital of indebtedness in the mortgage was purely formal, according to custom in Louisiana; that in fact said Cannon owed said Moorman nothing; that said Moorman gave to said Cannon, December 23, 1879, a counter-letter stating the facts, and that he (Moorman) had advanced nothing on said notes, but only held them as collateral; that after the maturity of the note sued on, in the year 1882, Moorman had, without authority, given the note to intervenors to secure a personal debt of his own, not inuring to the benefit of Cannon nor the mortgaged boat; that the intervenors had knowledge of the facts; that the note sued on had been issued by said Cannon, and afterwards taken up and extinguished, and that the claimant has a right to plead all equities against said mortgage claim.

The undisputed facts in the case are that in the fall of 1879 John W. Cannon was the owner of the steam-boat Cannon, and at least seven-eighths owner of the steam-boat Lee, and was engaged in running them both in the carrying trade on the Mississippi; that on November 1, 1879, Capt. Cannon employed George Moorman for a period of two years as general manager at New Orleans of the said steam-boats, at a salary of $10,000 per year,—$5,000 thereof to be paid in cash, and $5,000 to be paid in an interest to the extent of of $2,500 in each of said steam-boats; that Moorman continued for the two years in the employ of Capt. Cannon, under said contract, and received therefor the amount to be paid in cash, to-wit, $5,000 per year, and subsequently collected the $2,500 per year interest in the Lee by transferring mortgage notes on the Lee, held under the same terms and contract as the present note; that on the eighteenth of November 1879, Capt. Cannon executed and delivered to Moorman notes in various sums, due at various dates, to the amount of $25,000, among which was the present one, and secured $10,000 of them by mortgage on the Lee, and $15,000 of them, including the present one, by mortgage on the Cannon, in which latter mortgage Cannon declared that he was justly and truly indebted to Moorman in the full

sum of $15,000, represented by certain notes, describing them; that the mortgage on the Cannon was duly recorded in New Orleans, November 19, 1879, and in Louisville, Kentucky, June 17, 1881; that December 23, 1879, said Moorman delivered to Capt. Cannon a document or counter-letter in the terms following:

"December 23, 1879.

"The within mortgage notes of $25,000, given by Capt. Jno. W. Cannon, are simply held by me as collateral for any sum of money he may owe me, and for security for the payment of the paper on which my name is put as drawer, indorser, or acceptor for Capt. Cannon. I have not advanced Cannon any money on the notes; they are only held as stated."

—That October 1, 1881, Capt. Cannon sold the steam-boat Cannon to the claimant, giving deed duly recorded, and possession; that January 28, 1882, George Moorman, for value, gave his note at 90 days for $2,500, to intervenors, and secured the same by pledge of mortgage note on steamer Cannon for $2,500, (the one in present suit,) which note of Moorman was afterwards, with same collateral, extended to October 15, 1882; and that Capt. John W. Cannon died April 19, 1882.

The evidence in the case, consisting of letters of Cannon to Moorman, and letters from Moorman to Cannon, accounts from Capt. Cannon's books made up by Moorman, and Moorman's testimony, do not show any indebtedness from Cannon to Moorman, October 1, 1881, or afterwards, that would, under the terms of the counter-letter, show any interest in the said $2,500 note on the part of Moorman, or any right of his to pledge it or retain it, unless such right and interest existed on account of the indebtednes from Cannon to Moorman for that part of the salary of Moorman which was to be paid by a $2,500 per year interest in the Cannon.

I take it to be clear that as intervenors took the note in controversy long after it had matured, they took it subject to all equities existing between the original parties; and further, as the note was dishonored long prior to the first of October, 1881, the date of sale to claimant, so far as the mortgage right is concerned, no agreements or conduct between the original parties subsequent to the sale can bind the claimant; so that, if intervenors have any rights on the Cannon, they only have Moorman's rights as they existed on the first day of October, 1881. Indeed, the claimant denies that if Moorman held the note as simple security he had a right to repledge it; relying upon article 3142 of Civil Code of Louisiana, to the effect that a debtor may give in pledge whatever belongs to him, but cannot pledge any further right than he has himself.

On this point it is unnecessary to decide further than to refer to article 3145 of the Civil Code of Louisiana, which permits a person to pledge the property of another with the express or tacit consent of the owner, and to the fact that in the evidence of Moorman it is expressly stated that Capt. Cannon consented to Moorman's right to repledge;

so that if it is found that Moorman had a right to hold the note as security, he had an undisputed right to repledge it, at least to the extent of his interest. The question for decision in the case is then reduced to this: Taking the parties as they stood on October 1, 1881, had Moorman on that day, under his contract with Capt. Cannon, a right to hold, and was he then holding, the present note in pledge to secure the $2,500 per year interest Cannon was to pay him in the steamer Cannon towards his year's salary as manager? If he then had such right, and was then so holding it, he had the right to repledge to intervenors, who now have the right to enforce payment in this suit, and otherwise the intervenors fail.

From the undisputed facts in the case it would seem that the contract of pledge of the mortgage notes between Capt. Cannon and Moorman was a verbal one. If, however, it is considered as having been reduced to writing in the counter-letter signed by Moorman, and heretofore given in full, then the contract is found to be ambiguous, and not only susceptible of but requiring explanation by evidence and the surrounding circumstances. The expression therein, "any sum of money he may owe me," may relate to an indebtedness accrued, or to an indebtedness to accrue. That it should be construed most favorably to Cannon, on the ground that it was Moorman's negligence that caused the obscurity, may be taken for granted. See article 1958, Civil Code La. Still the ambiguity may be explained by the surrounding circumstances and parol evidence of the parties, so far as obtainable. It does not appear from the evidence that, at the date of the notes, there was any indebtedness from Cannon to Moorman, except the indebtedness that had, up to that date, accrued on account of salary under the peculiar contract recited among the undisputed facts of this case, while there is evidence tending to show that at that time Moorman was indebted to Cannon in the sum of over $2,000.

The letter itself shows that it was contemplated that indebtedness to accrue on account of Moorman's becoming a drawer, acceptor, or indorser of bills for account of Cannon, was to be secured by the mortgage notes held as collateral, all of which is specifically provided for in the letter; but it is nowhere suggested in the evidence that any other indebtedness from Cannon to Moorman was contemplated, except for moneys advanced, and that arising from unpaid salary. Moorman (called in the case as a witness for claimant) testifies positively that it was the understanding and agreement between him and Capt. Cannon that the mortgage notes were to be held by him to use as might be required as collateral to raise funds for the necessities of the steam-boat business of Capt. Cannon, to secure him in such cases as he might be on the paper of Capt. Cannon, and to secure him the sums that Capt. Cannon had agreed to pay him in an interest in the steam-boats as salary. And Moorman is corroborated by the fact that $5,000 of the notes on the Lee were used by him in paying his $5,000 interest in the Lee; and that such use was acqui-

esced in by Capt. Cannon; and by the further fact that, except such provision for paying and securing that part of Moorman's salary as was to be paid in "an interest in" the steam-boats, no provision for payment, nor payment, appears to have been made or contemplated.

On the other hand, it appears that in a diary kept by Moorman of Capt. Cannon's debts, running up to March, 1882, no mention is made of this claimed indebtedness to Moorman, nor of the mortgage notes. Moorman explains this by saying that, as both he and Capt. Cannon understood the condition of affairs between them, no such mention was considered necessary, and it was omitted by Cannon's direction. In two letters written by Moorman to Capt. Cannon on January 4 and 15, 1882, both of about the same purport, in relation to the condition of affairs, and the claims or demands of Moorman against Cannon, and where it would seem Moorman was called on to be explicit, he again uses ambiguous language to describe in what right he held the $25,000 mortgage notes: "And to secure me for any amount you might owe me for money advanced, or otherwise." These letters were written after the sale of the Cannon, and just before Moorman pledged the present note to intervenors. It is further to be noticed that Moorman's claim that the contract was that he should hold any of the mortgage notes to secure him the payment of the interest to be paid him in the steam-boats, on account of salary, is inconsistent, not only with the fact that nowhere in the letters that he gave Capt. Cannon— which were given to show in what capacity and under what circumstances he held possession of the notes—does he state specifically any such contract, but also with the fact conceded by him—iterated and reiterated in the letters—that he was holding the notes to pledge at any time for the purpose of raising such funds as the necessities of Capt. Cannon's steam-boat business might require.

All these matters bear strongly against the right of Moorman to hold the note as claimed; and yet, after considering all the circumstances, inferences, inconsistencies, and evidence bearing against the intervenors, with a decided bias in that direction, from the nature of the case, I am unable to make them overcome the positive evidence of Moorman, corroborated as he is by circumstances on his side. Were Moorman impeached or flatly contradicted by witnesses, or by any fact in the case, I could find for the claimant; but, unimpeached and uncontradicted by the testimony, and standing before the court (as proctors undisputably declared) as a man of character and good repute, his testimony must give the case to the intervenors. And it is so ordered.